UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**BOBETTE COUSINEAU**
   Plaintiff,

vs.

CASE NO: _____

**CITY OF PALM BAY, A FLORIDA MUNICIPAL CORPORATION,**
   Defendant.
_____/

# COMPLAINT

COMES NOW, Plaintiff, MS. BOBETTE COUSINEAU, by and through undersigned counsel, sues Defendant, CITY OF PALM BAY, and alleges as follows:

## JURISDICTION

1. This is an action brought pursuant to Section 706 of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1343(a)(4). This suit is also brought pursuant to the Florida Civil Rights Act of 1992, Fla. Stat. 760 *et. seq.*, over which this Court has supplemental jurisdiction.

## CONDITIONS PRECEDENT

2. All conditions precedent to the filing of this action have been fulfilled. Plaintiff filed a dual charge with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCRA") within 180 days of the Defendant's last discriminatory act and has timely filed her complaint within 90 days of receiving her Notice of Right to Sue. *See Exhibit A, Notice of Right to Sue and EEOC Charge.*

1

## PARTIES

3. Plaintiff, Ms. Bobette Cousineau, is a female citizen of the United States over the age of forty (40) and resides in Indian River County, State of Florida.

4. Defendant, City of Palm Bay, is a municipal corporation within Brevard County, State of Florida and subject to suit under state and federal law.

5. At all times material to this Complaint, Defendant, City of Palm Bay, has employed fifteen (15) or more employees and is an "employer" within the meaning of Title VII and the Florida Civil Rights Act.

## STATEMENT OF FACTS

6. Ms. Cousineau began working for the City of Palm Bay as a Maintenance Worker in the Public Works Department of the City on or about January 30, 2019.

7. Ms. Cousineau was terminated from her employment on or about May 31, 2019.

8. Ms. Cousineau alleges that she was terminated in retaliation for reporting harassment to her immediate Supervisor.

9. During the course of her employment, Ms. Cousineau experienced discrimination on the basis of her sex as well as sexual harassment in the workplace.

10. Specifically, City employee Mike W. made uninvited sexual comments and solicitations to Ms. Cousineau on a regular basis. Mike W. would stare at Ms. Cousineau's breasts and comment on 'how nice they looked.' These comments were made both in front of other City employees and privately to Ms. Cousineau. Mike W. often complained that his wife was not having sex with him and asked Ms. Cousineau to have sex with him. Ms. Cousineau objected to these harassing comments and asked him to stop.

11. Another incident of discrimination and sexual harassment occurred in front of her

Supervisor, Bill W. After the Supervisor assigned Ms. Cousineau a crew, the crew leader, City employee Carl R. responded: "What do you want me to do? Put her on to shovel behind the asphalt truck while I watch her sweat her titties off? It's not going to happen, put her on someone else's crew!" Despite witnessing this conduct, the Supervisor ignored it and said nothing to City employee Carl R. about his harassing comment.

12. The Supervisor, Bill W., also dismissed and ignored Ms. Cousineau's complaint about another employee, Kenny C., yelling at her in the workplace. Upon notifying the Supervisor of this harassment, the Supervisor Bill W. informed Ms. Cousineau that he did not believe Kenny C. had yelled at her and stated that he was likely only speaking loudly due to equipment noise. When Ms. Cousineau informed him that there was no equipment running while Kenny C. berated her, she was ignored by the Supervisor.

13. Because of the Supervisor's failure to address her initial complaint about Kenny C. harassing her, Ms. Cousineau felt intimidated and afraid to come forward about the other incidences of discrimination and harassment she was experiencing. Ms. Cousineau did not think that she would be believed due to the Supervisor's handling of her previous complaint. Further, other employees told Ms. Cousineau to stay quiet about her complaints or she would lose her job.

14. Prior to her 90-day assessment, Ms. Cousineau took initiative to ask her co-worker, Ernesto R., if he was aware of any issues with her performance. During this conversation, Ernesto R. informed her that she would likely receive complaints for her phone usage. Grateful for this feedback, Ms. Cousineau offered to buy Ernesto R. lunch. Ernesto R. declined the offer but demanded cash as a favor instead. Although Ms. Cousineau was concerned about this request, she gave Ernesto R. $20 because she was afraid he might gossip about personal

matters she had discussed with him.

15. On or about April 30, 2019, Ms. Cousineau attended her 90-day review where she was given a satisfactory rating overall by meeting the expectations of her job role. She was specifically found to meet expectations in skill/knowledge level, initiative, and work habits like attendance, punctuality, and safety.

16. Ms. Cousineau was frequently told by male co-workers to stay in the truck and not participate in activities such as shoveling, further solidifying her belief that the male co-workers did not want to work with her because she was female.

17. During the repair of pot holes, employees Kenny C. and Matt H. told her she had to urinate in the woods and laughed at her for not being able to urinate outdoors the way that men can. Gary H., a crew leader, urinated in public in front of her every time she was on his crew.

18. During the 90-day review, Ms. Cousineau addressed each of their concerns. She told the supervisors that she was rarely given a chance to use the front-end loader equipment because other employees were usually assigned that task. However, she made it known that she took initiative and practiced using that equipment on her own. She offered to demonstrate her proficiency to her supervisor, but he refused to give her that opportunity.

19. Further, Ms. Cousineau promised to put her phone away while noting than many of her co-workers were on their phones during work as well. Several male co-workers under the same employment circumstances frequently used their cell phones to make calls, one male co-worker even played video games on his cell phone. The male co-workers were not singled out for their phone usage the same way that Ms. Cousineau was.

20. Ms. Cousineau's Supervisor, Bill W., was satisfied with how she addressed the concerns

raised in her review as Ms. Cousineau's employment with the City of Palm Bay continued after the review. Further, it was noted that her performance improved after the review.

21. A few weeks later, on or about May 24, 2019, Ms. Cousineau became upset after employee Ernesto R. refused to work with her. Carl R., the crew leader that day, asked her to explain the situation. Ms. Cousineau relayed to Carl R. that she had confided in Ernesto R. and later felt extorted by him for the $20 when she asked for advice about her review.

22. Carl R. proceeded to discuss the incident with another male co-worker, Gary H, who later proceeded to question six different employees about the incident.

23. Ms. Cousineau then went to her supervisor's supervisor, Camille G., since the situation was being widely discussed and explained what had occurred. Following this, on or about May 29, 2019, Gary H. and Carl R. were called into the office with the supervisors and reprimanded for their role in the situation.

24. On or about May 30, 2019, Ms. Cousineau came into work to find her name scribbled off the sign-up sheet for an overtime shift that she had signed up for. Ms. Cousineau had reason to believe her name was crossed out by a City employee who was harassing her. Ms. Cousineau notified the Supervisor, Bill W., over text that she felt she was being harassed and hoped he could remedy it.

25. The next day, on May 31, 2019, Ms. Cousineau was terminated.

26. In the termination letter, the reasons provided for her termination were her inability to work well with others and her inability to operate the front-end loader.

27. Ms. Cousineau's termination came two days after the crew leaders were reprimanded, one who had sexually harassed Ms. Cousineau in front of the Supervisor, after months of discrimination due to being female, after being sexually harassed by co-workers, and one

day after texting her Supervisor Bill W. that she felt harassed and hoped he could help her resolve it.

## COUNT I
### SEX DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED IN 1991, 42 U.S.C. 2000e *ET SEQ*.
### &
## COUNT II
### SEX DISCRIMINATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992 FLA. STAT. 760 *ET SEQ*.

28. Plaintiff re-alleges and incorporates by reference Paragraphs 1-27 above with the same force and effect as if fully set out in specific detail below.

29. During Ms. Cousineau's employment, as a female employee she was subjected to repeated unwelcome and unlawful discrimination on the basis of her sex.

30. Because her direct supervisor witnessed the sexual harassment and was dismissive of her other complaints about employees, and other employees told her to stay quiet or she would lose her job, Ms. Cousineau reasonably feared she would be terminated if she complained any further, which is what occurred.

31. Ms. Cousineau was qualified to perform all tasks required of her, including use of the front-end loader, but was regularly precluded from participating in her crew's work activities due to sex discrimination.

32. This treatment was sufficiently severe such that it affected the conditions of Ms. Cousineau's employment with the Defendant. It also affected Ms. Cousineau in a tangible way since it culminated in the termination of her employment, causing significant hardship for the Plaintiff.

33. Similarly situated male employees were not treated the same way as Ms. Cousineau because they were not demeaned, harassed, and prevented from performing certain

employment tasks due to their sex. As an example, while Ms. Cousineau was given negative feedback for use of her cell phone at work (often for medical reasons, to contact providers during office hours), male co-workers were not reprimanded even when they blatantly played video games on the job. Further, other male co-workers were not told to stay in their trucks and not participate in certain job activities.

34. The Defendant knew or should have known of the harassment of Ms. Cousineau because her Supervisor witnessed inappropriate conduct and remarks by other employees that constituted sex discrimination and sexual harassment.

35. The reasons the Defendant has supplied to support Ms. Cousineau's termination were merely pretext for discrimination based on sex. Ms. Cousineau would not have been terminated but-for these unlawful motivations.

36. As a result of Ms. Cousineau's wrongful termination, she was deprived of income and had to incur costs of moving to a new location where she could find employment. She also incurred significant costs in moving to Palm Bay from Nevada to commence her employment with Defendant, only to be subjected to retaliatory termination approximately four months later.

WHEREFORE, Plaintiff BOBETTE COUSINEAU demands a jury trial and a judgment providing that Plaintiff should be made whole with compensatory, and other damages, pursuant to Title VII against the Defendant, CITY OF PALM BAY, including attorneys' fees and costs, and such other relief as this court may deem just and equitable; **and,**

WHEREFORE, Plaintiff BOBETTE COUSINEAU demands a jury trial and a judgment providing that Plaintiff should be made whole with compensatory, and other damages, pursuant to Florida Civil Rights Act against the Defendant, CITY OF PALM BAY, including attorneys' fees

and costs, and such other relief as this court may deem just and equitable.

## COUNT III
### SEXUAL HARASSMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED IN 1991, 42 U.S.C. 2000e *ET SEQ*.
### &
## COUNT IV
### SEXUAL HARASSMENT IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992 FLA. STAT. 760 *ET SEQ*.

37. Plaintiff re-alleges and incorporates by reference Paragraphs 1-36 above with the same force and effect as if fully set out in specific detail below.

38. During Ms. Cousineau's employment, as a female employee she was subjected to repeated unwelcome sexual harassment.

39. As aforementioned, she was solicited for sex by predatory co-workers and demeaned when co-workers made unwelcome sexual remarks about her body or her abilities due to being female. The City employees openly discussed her ability to urinate in public like men and urinated outdoors in front of her.

40. This treatment was sufficiently severe such that it affected the conditions of Ms. Cousineau's employment with the Defendant. The harassment due to her sex affected which tasks she was assigned to or prohibited from participating in, which in turn affected her ability to contribute to the crew's activities and the success of their projects. The unwanted, abusive, continual harassment affected her emotional state, causing her great distress and trauma in the workplace. The harassment also affected Ms. Cousineau in a tangible way since it culminated in the termination of her employment, causing significant hardship for the Plaintiff.

41. The sexually hostile work environment of Defendant caused Ms. Cousineau to suffer embarrassment, humiliation, great emotional pain and anguish as a result of being

subjected to sex discrimination.

42. The reasons the Defendant has supplied to support Ms. Cousineau's termination were merely pretext for discrimination based on sex. Ms. Cousineau would not have been terminated but-for these unlawful motivations.

43. The Defendant knew or should have known of the harassment of Ms. Cousineau's because, as aforestated, her direct supervisor witnessed and was thus apprised of the inappropriate conduct and remarks by other employees that constituted sex discrimination and sexual harassment. Her Supervisor even discussed with another City employee that it was hard for him to find co-workers that would work with a female.

44. Upon information and belief, the Defendant also had knowledge that other employees of the department had predatory backgrounds and did not properly address those concerns.

45. The City's procedures and policies, in policy and practice, and hiring practices upon information and belief, were insufficient to ensure female employees were being given equal treatment, particularly in male-dominated occupations such as a public works department.

46. Based on the background of many of the employees and their regular course of conduct of demeaning harassment, which could be readily observed by supervisors, the City should have known about the harassment.

47. The Defendant failed to take prompt or adequate action in response to Ms. Cousineau's harassment and discrimination and it also failed to correct the hostile work environment condoned by Defendant properly failing to screen and knowingly permitting predatory individuals to continue to work with Ms. Cousineau and other employees.

48. As a result of Ms. Cousineau's wrongful termination, she was deprived of income and had

to incur costs of moving to a new location where she could find employment. She also incurred significant costs in moving to Palm Bay from Nevada to commence her employment with Defendant, only to be subjected to retaliatory termination approximately four months later.

WHEREFORE, Plaintiff BOBETTE COUSINEAU demands a jury trial and a judgment providing that Plaintiff should be made whole with compensatory, and other damages, pursuant to Title VII against the Defendant, CITY OF PALM BAY, including attorneys' fees and costs, and such other relief as this court may deem just and equitable; **and,**

WHEREFORE, Plaintiff BOBETTE COUSINEAU demands a jury trial and a judgment providing that Plaintiff should be made whole with compensatory, and other damages, pursuant to Florida Civil Rights Act against the Defendant, CITY OF PALM BAY, including attorneys' fees and costs, and such other relief as this court may deem just and equitable.

## COUNT V
## RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED IN 1991, 42 U.S.C. 2000e *ET SEQ*.
## &
## COUNT VI
## RETALIATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992 FLA. STAT. 760 *ET SEQ*.

49. Plaintiff re-alleges and incorporates by reference Paragraphs 1-48 above with the same force and effect as if fully set out in specific detail below.

50. During Ms. Cousineau's employment, as a female employee she was subjected to repeated unwelcome and unlawful sexual harassment and discrimination on the basis of her sex.

51. Ms. Cousineau's direct supervisor witnessed and was apprised of the sex discrimination and sexual harassment.

52. When Ms. Cousineau texted her Supervisor that she felt she was being harassed, in the

context of the Supervisor's actual knowledge of the sexual harassment and sex discrimination against her, she was politely communicating and requesting that he properly address the issue of other male employees harassing her, which was a request in opposition to the sexual, hostile, discriminatory work environment that was being condoned and supported by the City in the public works department.

53. Instead of her direct supervisor addressing her concerns, he sent her a termination letter the next day.

54. This treatment was sufficiently severe such that it affected the conditions of Ms. Cousineau's employment with the Defendant. It also affected Ms. Cousineau in a tangible way since it culminated in the termination of her employment, causing significant hardship for the Plaintiff.

55. The reasons the Defendant has supplied to support Ms. Cousineau's termination were merely pretext for discrimination based on sex and the resulting unlawful retaliation. Ms. Cousineau would not have been terminated but-for these unlawful motivations.

56. As a result of Ms. Cousineau's wrongful termination, she was deprived of income and had to incur costs of moving to a new location where she could find employment. She also incurred significant costs in moving to Palm Bay from Nevada to commence her employment with Defendant, only to be subjected to retaliatory termination approximately four months later.

WHEREFORE, Plaintiff BOBETTE COUSINEAU demands a jury trial and a judgment providing that Plaintiff should be made whole with compensatory, and other damages, pursuant to Title VII against the Defendant, CITY OF PALM BAY, including attorneys' fees and costs, and such other relief as this court may deem just and equitable; **and,**

WHEREFORE, Plaintiff BOBETTE COUSINEAU demands a jury trial and a judgment providing that Plaintiff should be made whole with compensatory, and other damages, pursuant to the Florida Civil Rights Act against the Defendant, CITY OF PALM BAY, including attorneys' fees and costs, and such other relief as this court may deem just and equitable

Respectfully submitted,

*/s/ Claudia Pastorius, Esq.*
Fla. Bar. No. 113597
**Claudia T. Pastorius, P.A.**
802 E. New Haven Ave.
Melbourne, FL 32901
Telephone: (321) 450-1100
claudiapastorius@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of January 2021, the foregoing document was filed with the CM/ECF Efiling System and shall be duly served upon Defendants pursuant to Local Rule 1.10.
.

Respectfully submitted,

*/s/ Claudia Pastorius, Esq.*
**Claudia T. Pastorius, P.A.**